IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

_____
)
IN RE REGIONS MORGAN KEEGAN        )          No. 2:09-md-02009-SHM
SECURITIES, DERIVATIVE and ERISA    )
LITIGATION                                        )
)
This Document Relates to:                   )
)
*In re Helios Closed-End Fund Derivative*  )
*Litigation*, No. 2:11-cv-02935-SMH-dvk    )
_____)

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS'
VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT BY MORGAN
ASSET MANAGEMENT, INC. AND THE INDIVIDUAL DEFENDANTS**

Michael L. Dagley
Britt K. Latham
W. Brantley Phillips, Jr.
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615)742-6200

Shepherd D. Tate
Michael A. Brady
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, TN 38103-3672
(901) 543-5900

*Attorneys for Defendant Morgan Asset
Management, Inc.*

S. Lawrence Polk
SUTHERLAND, ASBILL &
BRENNAN LLP
999 Peachtree Street N.E.
Atlanta, GA 30309-3996
(404) 853-8000

*Attorney for Defendants Allen B.
Morgan, Jr., J. Kenneth Alderman,
Brian B. Sullivan, Joseph C. Weller, J.
Thompson Weller, Charles D.
Maxwell, Michele F. Wood, James C.
Kelsoe, Jr., Thomas R. Gamble and
David H. Tannehill*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................1

STANDARD OF REVIEW ...................................................................................3

I.      Plaintiffs Misstate the Pleading Standards Applicable to Defendants' Motion to Dismiss............................................................................................................3

II.     Consideration of the Funds' Public Filings and Related Documents Does Not Convert the Motion to Dismiss to a Motion for Summary Judgment. ...............................5

ARGUMENT ....................................................................................................7

I.      Plaintiffs' Claims for Breach of Fiduciary Duty and Unjust Enrichment Fail as a Matter of Law. ...............................................................................................7

        A.      Maryland Law Does Not Recognize a Cause of Action for Breach of Fiduciary Duty. .........................................................................................7

        B.      Plaintiffs Cannot Assert a Claim for Unjust Enrichment Because the Advisory Agreements Expressly Cover the Subject Matter of Their Claim. .........9

II.     Plaintiffs' Claims for Negligence and Negligent Supervision, And Any Claims Not Premised on Alleged Willful Misfeasance or Bad Faith, Are Barred by Exculpatory Provisions in the Advisory Agreements and the Funds' Articles of Incorporation...........10

III.    Plaintiffs Otherwise Fail to Plead a Claim for Relief Outside the Scope of the Applicable Exculpatory Provisions....................................................................11

        A.      Plaintiffs May Not Rely Solely on an Individual Defendant's Position as an Officer or Director of the Funds and/or MAM to State a Claim. .........................12

        B.      The Funds' Own Public Filings Demonstrate the Deficiencies in Plaintiffs' Remaining Allegations..........................................................................13

                1.      Plaintiffs Fail To Allege That Any Defendant Knowingly Caused the Funds to Misrepresent Their Investment Strategy and Inherent Risk.......14

                2.      Plaintiffs Have Not Sufficiently Alleged that Defendants Caused the Funds To Violate their Concentration Restriction. ...................................16

                3.      Plaintiffs Have Failed to Allege That Any Defendant Intentionally Misvalued Assets in Order to Inflate the Funds' NAVs. .........................17

IV.     Certain of Plaintiffs' Claims Are Untimely. ......................................................19

CONCLUSION ................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adloo v. H.T. Brown Real Estate, Inc.*,
  686 A.2d 298 (Md. 1996) ...................................................................................11

*Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*,
  665 A.2d 1038 (Md. 1995) ...............................................................................8, 9

*Amazon.com, Inc. v. Hoffman*,
  2009 WL 2031789 (Del. Ch. June 30, 2009) ......................................................10

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) .......................................................................................13

*CompuSpa, Inc. v. Int'l Bus. Mach. Corp.*,
  228 F. Supp. 2d 613 (D. Md. 2002) ....................................................................13

*County Commrs. of Caroline County v. J. Roland Dashiell & Sons, Inc.*,
  747 A.2d 600 (Md. 2000) ...................................................................................10

*Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund*,
  624 A.2d 1199 (Del. 1993) ...................................................................................4

*Dingle v. Bioport Corp.*,
  388 F.3d 209 (6th Cir. 2004) .................................................................................6

*Faller v. Faller*,
  2010 WL 1141202 (D. Md. March 22, 2010) ........................................................7

*Giddens v. Corepartners, Inc.*,
  2011 U.S. Dist. LEXIS 77408 (D. Md. July 18, 2011) ...........................................7

*Grassmueck v. Barnett*,
  281 F. Supp. 2d 1227 (W.D. Wash. 2003) .............................................................4

*Gumble v. Waterford Twp.*,
  171 F. App'x 502 (6th Cir. 2006) .........................................................................6

*In re Bank of Am. Corp., Sec., Deriv. & ERISA Litig.*,
  757 F. Supp. 2d 260 (S.D.N.Y. 2010) ............................................................12, 13

*In re Barclay's Bank PLC Sec. Litig.*,
  2011 WL 31548 (S.D.N.Y. Jan. 5, 2011) .............................................................17

*In re Citigroup, Inc. Sec. Litig.*,
    330 F. Supp. 2d 367 (S.D.N.Y. 2004)............................................................19

*In re Goodyear Tire & Rubber Co. Deriv. Litig.*,
    2007 WL 43557 (N.D. Ohio Jan. 5, 2007).................................................12

*In re Lucas*,
    312 B.R. 559 (Bkrtcy. D. Md. 2004) .........................................................10

*In re Mut. Fund Inv. Litig.*,
    403 F. Supp. 2d 434 (D. Md. 2005) ...........................................................4

*In re Regions Morgan Keegan Secs., Derivative & ERISA Litig.*,
    743 F. Supp. 2d 744 (W.D. Tenn. 2010).....................................................3

*In re Royal Appliance Secs. Litig.*,
    64 F.3d 663 ................................................................................................6

*In re Textainer P'ship Secs. Litig.*,
    2006 WL 1328851 (N.D. Cal. May 15, 2006) ...........................................4

*Int'l B'hood of Teamsters v. Willis Corroon Corp. of Md.*,
    802 A.2d 1050 (Md. 2002) .........................................................................7

*Jackson Nat'l Life Ins. Co. v. Kennedy*,
    741 A.2d 377 (Del. Ch. 1999)....................................................................4

*Jackson v. City of Columbus*,
    194 F.3d 737 (6th Cir. 1999) .....................................................................6

*Jones v. Bank of Am.*,
    2010 WL 6605789 (E.D. Va. Aug. 24, 2010) ...........................................9

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976)......................................................................4

*McGovern v. Deutsche Post Global Mail, Ltd.*,
    2004 WL 1764088 (D. Md. Aug. 4, 2004) ................................................8

*NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*,
    No. 10 Civ. 440 (LAK) (Slip Op.) (S.D.N.Y. Mar. 16, 2012)............18, 19

*NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*,
    No. 10 Civ. 440 (LAK) (HBP) (Magistrate's Rep. and Rec.) (S.D.N.Y. Feb. 9, 2012)..........18

*Pease v. Wachovia SBA Lending, Inc.*,
    6 A.3d 867 (Md. 2010) ..............................................................................8

*Robinson v. Fountainhead Title Group Corp.*,
447 F. Supp. 2d 478 (D. Md. 2006) ........................................................................9

*SEC v. Apuzzo*,
2010 WL 5359928 (D. Conn. Dec. 20, 2010) ..........................................................4

*Severn Marketing Assocs., Inc. v. Doolin*,
2010 WL 3834994 (D. Md. Sept. 29, 2010) .............................................................9

*Shenker v. Laureate Educ., Inc.*,
983 A.2d 408 (Md. 2009) ........................................................................................7

*Sims v. First Horizon Nat'l Corp.*,
2009 WL 3241689 (W.D. Tenn. Sept. 30, 2009) .....................................................6

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*,
532 F.3d 496 (6th Cir. 2008) ..................................................................................4

*Wilson v. Schwarz*,
99 F.3d 1141 (6th Cir. 1996) ..................................................................................6

*York Linings v. Roach*,
1999 Del. Ch. LEXIS 160 (Del. Ch. July 28, 1999) ................................................4

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 8(a) ..........................................................................3, 4

Federal Rule of Civil Procedure 9(b) ...................................................................... passim

Glen M. Vogel, Stuart L. Bass, and Nathan S. Slavin, "The Scienter Roadblock Has
Prevented Litigants From Advancing Down the Sarbanes-Oxley Litigation Highway,"
40 No. 1 Sec. ........................................................................................................13

Morgan Asset Management, Inc. ("MAM"), Allen B. Morgan, Jr., J. Kenneth Alderman, Thomas R. Gamble, Charles D. Maxwell, Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, Michele F. Wood, James C. Kelsoe, Jr. ("Kelsoe"), and David H. Tannehill (collectively, the "Individual Defendants") (together with MAM, the "Defendants") respectfully submit this reply memorandum in further support of their motion to dismiss this derivative action.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition Brief confirms their strategy of asserting both negligence-based claims and claims based on allegations that sound in fraud and hoping that one or the other survives.  As set forth in Defendants' opening memorandum and as discussed below, however, all of Plaintiffs' claims fail because (1) they are not actionable under Maryland law; (2) they are barred by applicable exculpatory provisions; and/or (3) Plaintiffs fail to plead supporting facts with the requisite particularity.  Thus, dismissal of the entire Amended Complaint is warranted.

In their Opposition, Plaintiffs ignore relevant law and limitations of liability cited by Defendants and rely on misdirection and inapposite authority in their attempt to defend the deficiencies in the Amended Complaint.  First, Plaintiffs do not—and cannot—rebut Defendants' argument that their claims for breach of fiduciary duty must be dismissed because Maryland law does not provide for an independent right of action for breach of fiduciary duty against any of the Defendants in this action.  Nor can Plaintiffs dispute that their unjust enrichment claim against MAM and Kelsoe also fails as a matter of law.  Under Maryland law, Plaintiffs may not assert a claim for unjust enrichment where a contract governs the subject matter in dispute between the parties.  Here, the subject of Plaintiffs' claim—the services provided by MAM and Kelsoe to the

---

[1]        Unless otherwise specified, all defined terms and abbreviations are the same as those set forth in Defendants' opening memorandum ("Defs.' Mem.").

Funds and their compensation for those services—is expressly governed by the terms of the Advisory Agreements between MAM and the Funds (the "Advisory Agreements").

Furthermore, Plaintiffs do not refute and cannot avoid the impact of the broad exculpatory provisions in both the Advisory Agreements, and the Funds' Articles of Incorporation. Pursuant to the express terms of these provisions, Plaintiffs' counts for negligence and negligent supervision, as well as all other claims not premised on allegations of bad faith or willful misfeasance, are barred as a matter of law and must be dismissed outright. In order to overcome the limitations of liability in the exculpatory provisions, Plaintiffs must plead facts showing that each Defendant acted with fraudulent intent, reckless disregard or gross negligence. Recognizing this, Plaintiffs have made no effort to allege simple negligence. Instead, they allege that Defendants engaged in a fraudulent scheme, allegations that clearly are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Plaintiffs cannot meet this burden, however, and their assertion that they are only required to plead facts giving Defendants "fair notice" of their claims flies in the face of governing law.

In fact, Plaintiffs essentially ignore applicable pleading requirements with regard to their claims against Individual Defendants Morgan, Alderman, Sullivan, Joseph C. Weller, Maxwell, Wood, Gamble, and Tannehill. The Complaint cites nothing other than these Defendants' positions as officers and directors of the Funds and/or MAM, coupled with conclusory assertions that they knew or should have known of alleged misconduct by Kelsoe and J. Thompson Weller. Moreover, Plaintiffs' assertion that Defendants caused the Funds to fraudulently conceal their investment strategy from investors not only lacks the requisite particularity but is also directly contradicted by publicly available information contained in the Funds' own public filings.

Likewise, Plaintiffs plead no factual support for their allegations that any Defendant intentionally misvalued Fund assets.  Finally, certain specifically identified claims are clearly time-barred.

**<u>STANDARD OF REVIEW</u>**

**I.    Plaintiffs Misstate the Pleading Standards Applicable to Defendants' Motion to Dismiss.**

Plaintiffs incorrectly argue that the less stringent pleading standards of Federal Rule of Civil Procedure 8(a) apply to their claims.  In doing so, they ignore their own allegations.  It is clear that "[w]here a plaintiff makes allegations of fraud . . . he or she must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."  *In re Regions Morgan Keegan Secs., Derivative & ERISA Litig.*, 743 F. Supp. 2d 744, 754 (W.D. Tenn. 2010).  Here, Plaintiffs themselves characterize the Amended Complaint as:

> alleg[ing] that Defendants breached their fiduciary duties and the Advisory Agreements by *intentionally violating* the Offering Materials, which included *intentionally* investing in assets contrary to the Funds' respective stated policies . . . , and then *intentionally manipulating the NAVs to prohibit the detection thereof*, after which [certain Defendants] *affirmatively covered up their scheme* by disseminating financial statements in violation of GAAP and other rules and regulations.

(Pls.' Opp. at 26 (emphasis supplied); *see also id.* at 3, 32.)  Because these fraud allegations are incorporated into each of Plaintiffs' claims, the entire Amended Complaint must be evaluated under Rule 9(b), even in the absence of an explicitly pleaded fraud claim.  (*See* Defs.' Mem. at 9-10 n.6-7, 17.)

Plaintiffs also ignore the relevant law cited by Defendants.  In fact, Plaintiffs unbelievably argue that "Defendants do not, and cannot, point to any authority specifically extending the particularity requirements of Rule 9(b) to Plaintiffs' claims."  (Pls.' Opp. at 26 n.13.)  To the contrary, Defendants have cited numerous such cases.  (*See* Defs.' Mem. at 9-10

n.7 (collecting cases).)  Moreover, none of the cases cited by Plaintiffs provide anything to the contrary.[2]

Regardless, neither Rule 9(b) nor Rule 8(a) can be satisfied by Plaintiffs' reliance on legal conclusions and unproven allegations asserted by the SEC, FINRA, and state regulators in complaints and settlement agreements.  Plaintiffs fail to distinguish effectively any of the cases cited by Defendants on this point.  Moreover, none of the cases cited by Plaintiffs permit them to do what they seek to do here:  bolster their deficient claims by referring to the mere fact that the SEC, FINRA, and state regulators filed regulatory actions against certain of the Defendants herein, and to Defendants' ultimate settlement of those actions.  *See, e.g., Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[N]either a complaint nor references to a complaint which results in a consent judgment may properly be cited in the pleadings under the facts of this case.").  Moreover, Plaintiffs do not, as they assert in their Opposition, confine themselves to borrowing "facts and allegations" from regulatory pleadings. (Pls.' Opp. at 31 n.17.)  Much of the Amended Complaint and Plaintiffs' Opposition are outright legal conclusions copied from the regulatory pleadings (*see, e.g.*, Am. Compl. ¶¶ 17-20), as well

---

[2]  Of the nine cases cited by Plaintiffs, several do not involve any actual allegations of fraud.  *See In re Textainer P'ship Secs. Litig.*, 2006 WL 1328851 (N.D. Cal. May 15, 2006); *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434 (D. Md. 2005) (recognizing that claims under ERISA do not require heightened pleading where there is no claim of fraud or mistake); *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1231-32 (W.D. Wash. 2003); *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund*, 624 A.2d 1199, 1207 (Del. 1993).   Two other cases do not involve any claims of breach of fiduciary duty or unjust enrichment.  *See SEC v. Apuzzo*, 758 F. Supp. 2d 136 (D. Conn. 2010); *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008).

Finally, two other cases cited by Plaintiff apply state and not federal law.  *See York Linings v. Roach*, 1999 Del. Ch. LEXIS 160 (Del. Ch. July 28, 1999); *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377 (Del. Ch. 1999).   Nonetheless, Plaintiffs' citation to *York Linings* supports Defendants' argument.  In that action, the Chancery Court dismissed a breach of fiduciary duty claim for failing "to plead with particularity the portion of the breach of fiduciary duty claim based on the director's alleged fraud."  1999 Del. Ch. LEXIS 160, at *1.

as blatant invitations for the Court to infer liability from the fact that certain Defendants settled the regulatory actions.  (*See, e.g.*, *id.* ¶¶ 21-23; 225-236.)  Plaintiffs' Opposition confirms that they are asking this Court to consider expert conclusions and conclusions by the SEC as facts that can salvage an otherwise deficient complaint.  (*See, e.g.*, Pls. Opp. at 18 ("Two different experts . . . have concluded;" "as explained in one of the expert reports;" and "the SEC concluded")).  This is wholly improper.  (*See supra* at 4-5; Defs.' Mem. at 10-12.)

Moreover, even if it were permissible for Plaintiffs to copy the allegations and conclusions from the regulatory pleadings and settlement agreements, any "factual material" taken from regulatory complaints and settlement agreements would be entitled to little, if any, deference.  In addition to being untested assertions that were never adjudicated on the merits, the regulatory actions—and the allegations made therein—involved investment funds beyond those at issue here.  (*See* Defs.' Mem. at 10-12.)

## II.     Consideration of the Funds' Public Filings and Related Documents Does Not Convert the Motion to Dismiss to a Motion for Summary Judgment.

Plaintiffs contend that Defendants have converted the pending motion to dismiss into a motion for summary judgment as a result of the declaration and attachments thereto filed in support of their motion to dismiss.  *See* Declaration of Britt K. Latham ("Latham Dec.") (Doc. No. 33-1).  Plaintiffs' contention is wrong.  Each of the exhibits submitted by Defendants may be considered by the Court without converting Defendants' motion to a motion for summary judgment.

Plaintiffs' Amended Complaint directly places the contents of the Funds' public filings at issue by virtue of the allegations.  Under such circumstances, courts may properly consider public records and other matters appropriate for judicial notice when ruling on a motion to

dismiss.[3]  *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999); *Gumble v. Waterford Twp.*, 171 F. App'x 502, 507 (6th Cir. 2006).  As the Sixth Circuit has expressly held, this Court "may consider the full text of the SEC filings, prospectus, analysts' reports and statements 'integral to the complaint,' even if not attached, without converting the motion into one for summary judgment under Rule 56."[4]  *In re Royal Appliance Secs. Litig.*, 64 F.3d 663 (Table), at *2 (6th Cir. 1995); *see also Sims v. First Horizon Nat'l Corp.*, 2009 WL 3241689, at *20 (W.D. Tenn. Sept. 30, 2009) (finding public filings that are "referred to in the Amended Complaint and/or are central to the claims" "will not convert the Motion to a motion of [sic] summary judgment").  This Court also may take judicial notice of newspaper articles.  *See Wilson v. Schwarz*, 99 F.3d 1141, at *1 (6th Cir. 1996); *Dingle v. Bioport Corp.*, 388 F.3d 209, 211 (6th Cir. 2004).  Accordingly, the Court may properly consider the attachments to the Latham Dec. without converting this motion to a motion for summary judgment.

---

[3]      Plaintiffs incorrectly describe the Latham Dec. as "self-serving."  (*See, e.g.*, Pls.' Opp. at 8 n.8, 24.)  The Declaration, however, includes only the Funds' public filings (Exs. A-L), the Advisory Agreements and Articles of Incorporation placed at issue in this action (Exs. M-T), and a newspaper article authored by former Federal Reserve Chairman Alan Greenspan (Ex. U).  Plaintiffs cite these same or similar types of documents in their Amended Complaint.  (*See, e.g.*, Am. Compl. ¶¶ 65-89; 151-209; 266.)  Their objection to Defendants' submission of the Advisory Agreements and the Funds' public filings is particularly absurd, in light of the fact that Plaintiffs, rely on, refer to, and even quote from many of these very documents.  Similarly, Plaintiffs argue that Defendants' motion is "replete with evidentiary-type arguments."  (Pls.' Opp. at 24)  In making this absurd proposition, Plaintiffs rely solely upon a distortion of Defendants' argument that biased expert reports and legal conclusions from a regulatory action are improperly cited because they have no "evidentiary value" at any stage of the proceeding, rendering them immaterial as a matter of law.  (*Id.*)

[4]      Plaintiffs do not cite any authority to refute this proposition.  In fact, the only authority they cite on this point simply discusses the impact of defendants relying on documents that—unlike the documents here—cannot be judicially noticed.  (Pls.' Opp. at 24.)

<u>**ARGUMENT**</u>

I.    **Plaintiffs' Claims for Breach of Fiduciary Duty and Unjust Enrichment Fail as a Matter of Law.**

A.    **Maryland Law Does Not Recognize a Cause of Action for Breach of Fiduciary Duty.**

Maryland law does not recognize a stand-alone tort for breach of fiduciary duty. Plaintiffs assert that "Defendants are wrong" because "those cases [cited by Defendants] *did not* hold that Maryland does not recognize a cause of action for breach of fiduciary duty." (Pls.' Opp. at 33 (emphasis supplied).) Contrary to Plaintiffs' bald assertion, the authority cited by Defendants states exactly that. *See, e.g.*, *Int'l B'hood of Teamsters v. Willis Corroon Corp. of Md.*, 802 A.2d 1050, 1051 n.1 (Md. 2002) ("Maryland does not recognize a separate tort action for breach of fiduciary duty."); *Faller v. Faller*, 2010 WL 1141202, at *5 (D. Md. Mar. 22, 2010) ("Maryland state and federal courts have clarified . . . that a breach of fiduciary duty can give rise to a cause of action, but it cannot be an independent cause of action.")).

While Plaintiffs claim that "both state and federal courts in Maryland recognize claims for breach of fiduciary duties, especially in the context of a shareholder derivative action," (Pls'. Opp. at 33), neither of the two cases they cite stands for that proposition. *See Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 422 (Md. 2009) (holding that "in a cash-out merger transaction where the decision to sell the corporation already has been made, shareholders may pursue *direct claims* against directors for breach of their fiduciary duties of candor and maximization of shareholder value") (emphasis supplied); *see also Giddens v. Corepartners, Inc.*, 2011 U.S. Dist. LEXIS 77408, at *12-13 (D. Md. July 18, 2011) (observing that "the Maryland Court of Appeals has made clear that no omnibus tort [for breach of fiduciary duty]

exists," . . . . "the courts have entertained causes of action premised on the violation of a fiduciary duty by a majority shareholder or director to a minority shareholder").

Instead of citing authority to contest Defendants' argument, Plaintiffs try to confuse the issue by citing cases that merely affirm that Maryland law recognizes the existence of fiduciary duties. Defendants have already conceded that directors and officers owe certain duties to corporations. (*See* Defs.' Mem. at 19) But that is not the issue here. The issue is whether Maryland law recognizes an independent cause of action for breach of fiduciary duty, and none of Plaintiffs' cases support a stand-alone right of action against the officers and directors of the Funds. (*See id.* at 12-13.) *Plaintiffs' failure to cite a single case recognizing a cause of action for a breach of fiduciary duty under the circumstances before this Court is striking.* Moreover, none of the cases Plaintiffs cite discuss duties owed by a third-party entity such as MAM, much less a cause of action against such entities. Thus, at a minimum, Maryland law does not recognize an independent cause of action for breach of fiduciary duty against MAM.

In short, not one of the cases cited by Plaintiffs refutes Defendants' argument that Plaintiffs' claims for breach of fiduciary duty fail as a matter of law. Their cases merely support the proposition that fiduciary duties can subsequently be incorporated into a separate cause of action, meaning "it can be a component of a cause of action – but it cannot be a cause of action standing alone." *McGovern v. Deutsche Post Global Mail, Ltd.*, 2004 WL 1764088, at *12 (D. Md. Aug. 4, 2004).[5] (*See generally* Pls.' Opp. at 27-29.) Accordingly, Plaintiffs' claims for breach of fiduciary duty must be dismissed with prejudice.

---

[5] In support of their argument, Plaintiffs misleadingly cite to *Pease v. Wachovia SBA Lending, Inc.*, 6 A.3d 867, 889 n.13 (Md. 2010). Plaintiffs cite to the dissent in *Pease*, which, in turn, relies on a prior opinion by the Maryland Court of Appeals, *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc. See id.* (quoting *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1045-46 (Md. 1995)) *Alleco*, however, presumed the existence of a cause of action for breach of fiduciary duty solely for

**B.**     **Plaintiffs Cannot Assert a Claim for Unjust Enrichment Because the Advisory Agreements Expressly Cover the Subject Matter of Their Claim.**

Maryland law likewise does not recognize a cause of action for unjust enrichment when an express contract governs the subject matter in dispute between the parties.  (*See* Defs.' Mem. at 13-14.)  While Plaintiffs note exceptions to this rule (*see* Pls.' Opp. at 35), none of them applies here.  First, "[a]ny fraud or bad faith that negates the operation of the rule must occur in the formation of the contract."  *Robinson v. Fountainhead Title Group Corp.*, 447 F. Supp. 2d 478, 493 (D. Md. 2006) (citation omitted); *Severn Marketing Assocs., Inc. v. Doolin*, 2010 WL 3834994, at *10 n.4 (D. Md. Sept. 29, 2010) (noting same).  Plaintiffs do not allege any bad faith or fraud in the formation of the governing agreements.  To the contrary, they assert a claim for breach of contract that "arises out of the Advisory Agreements."  (Pls.' Opp. at 37-38.)

Second, the Advisory Agreements expressly govern the rights and duties of MAM and the Funds, including the fees paid to MAM.  More specifically, the fees Plaintiffs seek to recover with their unjust enrichment claim were set forth in and paid pursuant to the Advisory Agreement, and Plaintiffs do not dispute the validity of any provision of the governing contracts. Regardless, it is not required that the contract cover *every* contingency that may arise – the standard is whether the contract addresses the *subject matter*. [6]   *See, e.g.*, *Jones v. Bank of Am.*, 2010 WL 6605789, at *7 & n.8 (E.D. Va. Aug. 24, 2010) (applying Maryland law and finding a mortgage loan agreement covered the subject matter of the dispute between the parties, even

---

purposes of the Court's opinion in that action.  These cases certainly cannot be read as supporting a stand-alone cause of action for breach of fiduciary duty under Maryland law.  In fact, in assuming the existence of such a cause of action, the Maryland Court of Appeals' opinion in *Alleco* cited the Restatement (Second) of Torts § 874.  The Court did not cite any decisions relying on Maryland law.  *See Alleco*, 665 A.2d at 1046.

[6]      In trying to suggest that the Advisory Agreements somehow do not cover the subject matter of the fees, Plaintiffs rely on cases where the claim survived dismissal because there was a dispute about whether a valid agreement existed.  (Pls.' Opp. at 35)  Again, this reliance is misplaced given Plaintiffs' attempt to recover under the very same contracts.

though the agreement did not explicitly provide a remedy for the bank's alleged failure to credit the mortgage payments against the balance of the loan).  Thus, "events arising out of the same subject matter" of the contract cannot proceed under the quasi-contract theory of unjust enrichment.  *County Commrs. of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 608 n.8 (Md. 2000) (quoting *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir. 1993)).  For these reasons, Plaintiffs' unjust enrichment claim against MAM fails as a matter of law.

## II.   Plaintiffs' Claims for Negligence and Negligent Supervision, And Any Claims Not Premised on Alleged Willful Misfeasance or Bad Faith, Are Barred by Exculpatory Provisions in the Advisory Agreements and the Funds' Articles of Incorporation.

In responding to Defendants' arguments for dismissal of Plaintiffs' claims of negligence and negligent supervision, Plaintiffs completely ignore the exculpatory provisions in the Advisory Agreements between the Funds and MAM, and in the Funds' Articles of Incorporation. (*See* Pls.' Opp. at 43-44.)   Yet, as set forth in Defendants' opening memorandum, these exculpatory provisions require dismissal of any claims not alleging bad faith or intentional misconduct.  (Defs.' Mem. at 14-16.)   The Maryland Supreme Court has recognized and enforced such provisions under Maryland law, and the ICA likewise contemplates the existence of such provisions.  (*See id*. at 14-15 (citing *Wolf v. Ford*, 644 A.2d 522, 528, 537 (Md. 1994) and 15 U.S.C. § 80a-17(i)).)  The exculpatory provisions at issue in this litigation are expressly tailored to the requirements of both Maryland law and the ICA and should be enforced.  (*Id.* at 15-16.)[7]

---

[7]      Plaintiffs argue that exculpatory provisions are not ripe for consideration at the motion to dismiss stage.  (Pls.' Opp. at 44 n.26.)  Courts nonetheless have considered such provisions at the motion to dismiss stage.  *See, e.g*., *Amazon.com, Inc. v. Hoffman*, 2009 WL 2031789, at *3 & n.16 (Del. Ch. June 30, 2009) (holding that an exculpatory provision "defense may be raised in the context of a motion to dismiss") (citation omitted); *In re Lucas*, 312 B.R. 559 (Bkrtcy. D. Md. 2004) (analyzing an exculpatory provision at the motion to dismiss stage).

Tellingly, at the end of Plaintiffs' Opposition, they effectively concede that claims based on simple negligence cannot survive in the face of these limitations of liability.  In their only discussion of the exculpatory provisions, Plaintiffs quote the provision contained in the Advisory Agreements and argue that these limitations "cannot protect against [ ] bad faith and deliberately dishonest actions."  (Pls.' Opp. at 43-44.)  Defendants agree.  The only way for Plaintiffs to avoid the impact of these exculpatory provisions would be to adequately allege "intentional conduct or harm caused by reckless, wanton, or gross behavior."  *Adloo v. H.T. Brown Real Estate, Inc.*, 686 A.2d 298, 301 (Md. 1996).  Given these express limitations, the Court should dismiss outright Plaintiffs' counts for negligence and negligent supervision, and any other claims supposedly premised on allegations of negligence or something less than bad faith or intentional misconduct.[8]

### III.   Plaintiffs Otherwise Fail to Plead a Claim for Relief Outside the Scope of the Applicable Exculpatory Provisions.

As Plaintiffs seem to acknowledge, to sufficiently plead a claim against any of the Defendants outside the scope of the applicable exculpatory provisions, Plaintiffs must allege conduct constituting willful misfeasance, bad faith misconduct, gross negligence, or reckless disregard of a defendant's duties on the part of each defendant.  (*See* Defs.' Mem. at 16-17.)  As discussed *supra*, because Plaintiffs attempt to evade the exculpatory provisions by alleging *intentional* misconduct, the particularity requirements of Federal Rule of Civil Procedure 9(b)

---

[8]    Plaintiffs are talking out of both sides of their mouths regarding whether or not they have actually alleged (or tried to allege) the requisite fraudulent conduct.  For example, after stating that "Defendants knowingly and deliberately orchestrated a scheme," Plaintiffs argue that "Defendants incorrectly contend that the Funds' breach of fiduciary duty claims actually sound in fraud."  (Pls.' Opp. at 7.)  If, in fact, Plaintiffs are basing their claims for breach of fiduciary duty and breach of contract on something less than bad faith or willful misfeasance, those claims are barred by the exculpatory provisions.  On the other hand, if Plaintiffs are indeed premising their claims on allegations of bad faith or willful misconduct (i.e., fraud), they must satisfy the requirements of Rule 9(b), which they have not done.  (*See* Defs.' Mem. at 9-10 n.7 (citing cases applying Rule 9(b) to non-fraud causes of action, including claims for breach of fiduciary duty); *see also supra* at 3-4.)

apply.  This is an extremely stringent pleading standard.  Further, with respect to those Individual Defendants who served as officers and directors of the Funds, Plaintiffs must also overcome the protections afforded by the Maryland business judgment rule.  The allegations in the Amended Complaint demonstrate that Plaintiffs have failed to plead facts sufficient to overcome these hurdles or protections.

### A.    Plaintiffs May Not Rely Solely on an Individual Defendant's Position as an Officer or Director of the Funds and/or MAM to State a Claim.

The Amended Complaint largely fails to plead any facts in support of Plaintiffs' claims against the Individual Defendants. In their Opposition, Plaintiffs effectively concede that they have pleaded no facts whatsoever regarding purported conduct on the part of Morgan, Alderman, Tannehill, Joseph C. Weller, Maxwell, Wood, Sullivan, and Gamble.  (*See* Pls.' Opp. at 9-13.) Indeed, with the exception of Messrs. Kelsoe and J. Thompson Weller—for whom Plaintiffs merely parrot allegations from regulatory proceedings—Plaintiffs make no substantive allegations with respect to the balance of the Individual Defendants beyond reciting their positions as officers or directors and listing their supposed roles and responsibilities.  (Defs'. Mem. at 17-20.) [9]

A defendant's mere status as the officer or director of a company, however, is wholly insufficient to confer liability.  *See In re Goodyear Tire & Rubber Co. Deriv. Litig.*, 2007 WL 43557, at \*10 (N.D. Ohio Jan. 5, 2007) (dismissing plaintiff's claim for breach of fiduciary duty where plaintiff "merely identif[ies] the Individual Defendants as officers or directors"); *In re*

---

[9]    Plaintiffs instead rely heavily on generalized references to "Defendants'" alleged conduct. (*See, e.g.,* Pls.' Opp. at 13-14.)

12

*Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 757 F. Supp. 2d 260, 338 (S.D.N.Y. 2010).[10]

Given the lack of any specific factual allegations regarding how each Individual Defendant

breached duties of care or loyalty to the Funds, Plaintiffs fail to state a claim as a matter of law

and have not overcome the exculpatory clauses that shield Defendants from liability.  *See In re*

*Bank of Am.*, 757 F. Supp. 2d at 336-38; *CompuSpa, Inc. v. Int'l Bus. Mach. Corp.*, 228 F. Supp.

2d 613, 626-27 (D. Md. 2002); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

> **B.**    **The Funds' Own Public Filings Demonstrate the Deficiencies in Plaintiffs'**
> **Remaining Allegations.**

Plaintiffs' theory is that Defendants "breached their fiduciary duties and the Advisory

Agreements by intentionally violating the Offering Materials, which included intentionally

investing in assets contrary to the Funds' respective stated policies and then intentionally

manipulating the NAVs to prohibit the detection" of their alleged scheme.  (Pls.' Opp. at 26.).[11]

This theory obviously sounds in fraud, and therefore invokes the heightened pleading standard of

Rule 9(b).  But Plaintiffs make no effort to meet this standard.  In fact, they strangely disavow

that the Complaint sounds in fraud, assert in conclusory fashion that Rule 9(b) does not apply,

and describe as "patently false" Defendants' characterization of their claims as alleging

fraudulent misconduct.  (Pls.' Opp. to Anthony Mem. at 6; *see also* Pls.' Opp. at 25-27.)  Should

---

[10]    Similarly, the simple fact that certain Individual Defendants signed or certified the Funds' financial statements is immaterial, since Plaintiffs have pleaded no facts indicating that any Defendant signed or certified financials *knowing* that they were misstated.  *See* Glen M. Vogel, Stuart L. Bass, and Nathan S. Slavin, "The Scienter Roadblock Has Prevented Litigants From Advancing Down the Sarbanes-Oxley Litigation Highway," 40 No. 1 Sec. Reg. L. J. Art. 3 (2012) ("[T]he question remains:  Is submitting a false certification under SOX enough to hold an executive personally responsible for subsequent losses?  The answer to that question is a resounding no.  To date, no court has held that submitting false certifications alone is sufficient to impose liability on corporate executives.").

[11]    Plaintiffs continue to make the conclusory assertion that Defendants "breached their fiduciary duties owed to the Funds and their shareholders by knowingly causing or allowing the Funds to make statements in their SEC filings . . . that violated GAAP and other rules and regulations."  (Pls.' Opp. at 17-18.)  As set forth in Defendants' opening memorandum, Plaintiffs fail to specify what provisions of GAAP or "other rules and regulations" were purportedly violated.  (Defs'. Mem. at 28-30.)

the Court accept Plaintiffs' implausible disclaimers of fraud, their claims are barred by the exculpatory provisions, discussed *supra*.  Regardless, when the Funds' own public filings are considered, it becomes clear that Plaintiffs have failed to allege sufficient facts to satisfy Rule 9(b) and support a theory of fraud, and Plaintiffs' claims must be dismissed as a matter of law.[12]

### 1.    Plaintiffs Fail To Allege That Any Defendant Knowingly Caused the Funds to Misrepresent Their Investment Strategy and Inherent Risk.

Plaintiffs' claims are tainted by their own blatant mischaracterization of the Funds' investment strategy and risk profile.  Plaintiffs allege that Defendants concealed the "true risks" of an investment in the Funds by failing to disclose the extent of the Funds' investments in structured finance securities such as ABS, MBS, and other "illiquid securities," and as a result made the Funds' holdings appear "less risky than they actually were."  (*See, e.g.,* Pls.' Opp. at 3-5, 18.)   Plaintiffs persistently refer to the Funds as a supposedly "diversified, low-risk investment."   (*Id.* at 3 (also alleging that the Funds were intended to offer an investment opportunity "at a low risk to shareholders").)   Plaintiffs, however, fail to provide any particularity regarding these assertions.  In fact, this argument is directly contradicted by the Funds' own offering documents and other public filings, as set forth in Defendants' opening memorandum.

Plaintiffs are well aware that the Funds never claimed to be "low-risk."  To the contrary, the Funds' public filings disclosed an investment strategy that "involved a *high degree of risk*" and disclosed that "[s]tockholders could lose some or all of their investment" because the Funds

---

[12]    Plaintiffs incorrectly state that Defendants "do not contend that Plaintiffs have not pled facts supporting" their claim for breach of contract.  (Pls.' Opp. at 38.)  Defendants consistently have argued exactly that.  (*See* Defs.' Mem. at 16-17.)  Plaintiffs' claim for breach of contract is premised on the same set of factual allegations as the rest of their claims.  Therefore, to the extent it is based on negligence, Plaintiffs' claim for breach of contract is barred by the exculpatory provision in the Advisory Agreements, and to the extent Plaintiffs try to allege fraud, they fail to satisfy the requirements of Rule 9(b).

intended to invest a "majority of [their] total assets in below investment grade debt securities," commonly referred to as "junk bonds."   Latham Dec. Ex. A (RMH Prosp. at Cover Page) (emphasis supplied); *see also id.* Exs. C, E, & G (RSF, RMA, & RHY Prosp. at Cover Pages). The Funds' disclosures—which included the type and amount of securities in which the Funds invested—left no doubt as to the Funds' strategy of investing the majority of their assets in structured securities such as ABS, MBS, and CDOs.   The Funds' public filings also expressly disclosed the specific risks inherent in *these specific securities*, including the risks related to MBS, ABS, illiquid and restricted securities, and derivatives.  (Defs'. Mem. at 21-22.) Plaintiffs' Opposition does not refute these facts.  (*See* Pls.' Opp. at 13-14; 17-20.)  In fact, Plaintiffs merely repeat the conclusory assertions in the Amended Complaint and avoid any discussion of the actual substance of the Funds' public filings.[13]

At bottom, Plaintiffs' only support for their argument that Defendants somehow intentionally understated or concealed risk is the fact that the Funds ultimately suffered losses at the onset of a global credit crisis, in which the market for structured securities collapsed.  But such hindsight pleading is no substitute for pleading facts that would show how each Defendant knowingly or intentionally caused the Funds' risk disclosures to be inadequate.  (Defs'. Mem. at 24, 28.)  Plaintiffs' claim fails as a matter of law.

---

[13]      Plaintiffs' allegations that Defendants intentionally or fraudulently misclassified ABS and MBS in order "to make the [Funds'] portfolios appear more diversified and less risky than they actually were," (Pls.' Opp. at 5, 17), and selected an inappropriate benchmark index for the purpose of misleading investors regarding the Funds' risk profile, similarly fail.  (*Id.*)  Plaintiffs do not plead any facts in support of these assertions of fraudulent misconduct on the part of any Defendant.

### 2. Plaintiffs Have Not Sufficiently Alleged that Defendants Caused the Funds To Violate their Concentration Restriction.

Plaintiffs also have failed to plead facts supporting their assertion that Defendants caused the Funds to violate the concentration restriction that prohibits the Funds from "purchas[ing] the securities of any issuer . . . if, as a result, 25% or more of the Fund[s'] total assets would be invested in the securities of companies the principal business activities of which are in the same industry." (Am. Compl. ¶ 130; *see also* Pls.' Opp. at 13-14.) Importantly, Plaintiffs fail to plead the date or amount of any specific purchases, or even identify any specific purchases, that purportedly caused the Funds to violate the concentration restriction. (Defs.' Mem. at 24-26.) Absent such fundamental allegations, Plaintiffs' claims fail as a matter of law.[14]

Plaintiffs rely solely on conclusory assertions that, at various times, a given percentage of the Funds' assets were invested in certain types of securities. These allegations are wholly insufficient to state a claim. First, contrary to Plaintiffs' assertions, ABS, MBS, and CDOs are *types* of securities, not industries. (Defs.' Mem. at 24-26.) The restriction forming the basis of Plaintiffs' claims speaks to the industry in which the company issuing the security does business, not the type of security. Indeed, Plaintiffs acknowledge that a CDO is "a type of structured [asset backed security]" and that ABS, MBS, and CDOs are "structured debt instruments." (Pls.' Opp. at 13.) *In fact, in their Opposition, Plaintiffs provide no support for their assertion that these types of securities constitute "industries" within the meaning of the restriction.*

---

[14]    Plaintiffs appear to have abandoned their assertion that the Funds were not permitted to invest in structured debt securities such as ABS, MBS, and CDOs without "necessary shareholder approval." (Am. Compl. ¶¶ 131, 135.) As set forth in Defendants' opening memorandum, Plaintiffs have failed to identify any investment guideline or restriction that would purport to limit the Funds' ability to invest in these types of securities. (Defs.' Mem. at 25-26.)

Additionally, Plaintiffs have pleaded no facts supporting any assertion that Defendants *intentionally* caused the Funds to violate the industry concentration restriction.  Undercutting any such assertion is the fact that the Funds disclosed their investments at all times, *including disclosures that indicated investments of well over 25% of the Funds' net assets in ABS.  See, e.g.*, Latham Dec. Ex. I (2006 Consol. Ann. Rpt. at 6, 9-18, 22, 25-35, 40, 43-50, 54, 57-67); *see also* Defs.' Mem. at 21.  Each Fund's disclosures also included a portfolio schedule that listed each security held by name and the category of securities held as a percentage of the Fund's net assets.  *See id.*; *see also id.* Ex. K (2007 Consol. Ann. Rept. at 5, 8-18, 23, 26-37, 41, 44-54, 59, 62-73.)  These disclosures undermine any contention that the Individual Defendants caused the Funds to fraudulently misrepresent their compliance with the concentration restriction.

### 3. Plaintiffs Have Failed to Allege That Any Defendant Intentionally Misvalued Assets in Order to Inflate the Funds' NAVs.

Plaintiffs' allegations that Defendants caused the Funds to issue false and misleading financial reports misstating the true value of the Funds' holdings fare no better.  (Pls.' Opp. at 14-17.)  Plaintiffs concede that the valuation of securities is a matter of judgment and opinion: "The [Funds'] Prospectuses admitted that the market prices of illiquid securities generally are more volatile than those of liquid securities, thereby making them more difficult to value.  Thus, *MAM's judgment was particularly more important in the valuation process*."  (Pls.' Opp. at 15 (emphasis supplied) (citation omitted).)  Therefore, in order for these admittedly subjective valuations to be "false," a "[c]omplaint must adequately allege that [Defendants] did not truly believe [their] own valuation."  *In re Barclay's Bank PLC Sec. Litig.*, 2011 WL 31548, at *8 (S.D.N.Y. Jan. 5, 2011).  (*See also* Defs.' Mem. at 27.)

The United States District Court for the Southern District of New York recently dismissed claims premised on the alleged misvaluation of CDOs and other allegedly illiquid debt

instruments during 2007, noting that such statements of opinion "are not actionable in the absence of legally sufficient allegations that the maker, at the time the statements were made, did not in fact entertain the opinions or hold the belief upon which the claims are based." *NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*, No. 10 Civ. 440 (LAK), slip op. (S.D.N.Y. Mar. 16, 2012) (adopting Magistrate Judge's report and recommendation).  Plaintiffs in the *Bank of America* case argued, as Plaintiffs do here, that the defendants failed to write down the value of assets such as CDOs sufficiently during the relevant time period, leading to overstated valuations in public filings.  *NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*, No. 10 Civ. 440 (LAK) (HBP), Magistrate's Rep. and Rec., at 40-41 (S.D.N.Y. Feb. 9, 2012).  The court held that the plaintiffs had not adequately pleaded that the valuations in question were subjectively "false" at the time they were rendered, and "the mere fact that BAC's write-downs subsequently turned out to be insufficient—or were substantially smaller than the write-downs taken by industry peers with 'similar' portfolios—would not render those figures false at the time that they were publicly filed with the SEC."  *Id.* at 41 (citations omitted).

Similarly, the Amended Complaint in this action does not adequately allege that any Defendant misvalued securities, or allowed others to misvalue securities, knowing that their valuations were not accurate.  Moreover, Plaintiffs' Opposition confirms that they are alleging intentional misconduct and a fraudulent scheme.  (*See* Pls.' Opp. at 4, 16-17 (alleging, *inter alia*, that "Defendants actively covered up their wrongdoing and concealed the Funds' massive losses," and that "Defendants . . . knowingly and improperly delayed the write-downs of the values of these investments that would have occurred if the NAVs were actively reported, and knowingly failed to disclose the true financial performance of the Funds to their shareholders")).

Thus, as discussed above, such allegations are also subject to the pleading requirements of Rule 9(b).  Plaintiffs do not come close to meeting this standard.

The only factual support offered for their theory of fraudulent misconduct consists of assertions that the Funds' assets ultimately declined in value, and assertions that Defendants "failed to comply" with the Funds' valuation policies and procedures.  (Pls.' Opp. at 15-17.)  First, the fact that the Funds ultimately suffered losses is clearly insufficient, as Plaintiffs may not plead "fraud by hindsight."  *Bank of Am. Corp.*, Slip Opinion at 1.  Similarly, an alleged failure to follow proper procedure does not allege fraud unless it is supported by particularized facts sufficient to show willful or bad faith misconduct.  (See Defs.' Mem. at 27-28.)  Plaintiffs' Amended Complaint fails to plead any such facts in support, and simple allegations of mismanagement do not equate to fraud.  *See, e.g.*, *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 375 (S.D.N.Y. 2004).

## IV.   Certain of Plaintiffs' Claims Are Untimely.

Any and all claims premised on purported misrepresentations regarding the Funds' portfolio composition and the risk involved in the Funds' investment strategy are time-barred.  (Defs.' Mem. at 30-32.)   No amount of misdirection and mischaracterization of Defendants' arguments can change the fact that the Funds' own public filings dating back to at least 2006— which Plaintiffs' themselves cite in their pleadings—informed Plaintiffs on a quarterly basis of exactly the types of securities in which the Funds were investing, and the percentage of the Funds' assets invested in specific types of securities such as MBS and ABS.  (*Id.*)  Furthermore, it is disingenuous for Plaintiffs to state that "general knowledge regarding the condition of the subprime mortgage market" is insufficient to put Plaintiffs on notice of their claims, when they themselves cite the very same news articles from the mainstream and financial press and suggest

that *Defendants* should have "taken . . . steps to protect the Funds" from a market collapse in light of this publicly available information.  (Am. Compl. ¶¶ 83-90.)  The reality is that Plaintiffs were charged with notice of certain claims as a matter of law by January 2007 at the latest, if not earlier.  Conclusory assertions that this purportedly "improper" conduct began in 2007 does not change this fact.  (*See* Pls.' Opp. at 39-43.)  These untimely claims fail as a matter of law.

## CONCLUSION

As stated in Defendants' opening memorandum, Plaintiffs' Amended Complaint should be dismissed with prejudice.  Should the Court grant leave to amend, Plaintiffs would receive what amounts to a fourth bite at the apple.  Moreover, any amendment would be futile because Plaintiffs' claims fail as a matter of law.  (Defs.' Mem. at 32.)  For the reasons set forth herein and in Defendants' opening memorandum, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

DATED this 28th day of March 2012

Respectfully submitted,
BASS, BERRY & SIMS PLC

By: /s/ Britt K. Latham
    Michael L. Dagley
    Britt K. Latham
    W. Brantley Phillips, Jr.
    150 Third Avenue South; Suite 2800
    Nashville, TN 37201
    (615)742-6200

    Shepherd D. Tate
    Michael A. Brady
    100 Peabody Place; Suite 900
    Memphis, TN 38103-3672
    (901) 543-5900

    *Attorneys for Defendant Morgan Asset*
    *Management, Inc.*

    SUTHERLAND, ASBILL & BRENNAN, LLP

By: /s/ S. Lawrence Polk
    S. Lawrence Polk
    999 Peachtree Street N.E.
    Atlanta, GA 30309-3996

    *Attorney for Allen B. Morgan, Jr., J. Kenneth Alderman, Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, Michele F. Wood, James C. Kelsoe, Jr., Thomas R. Gamble and David H. Tannehill*

21

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on March 28th, 2012, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

**BRAMLETT LAW OFFICES**
PAUL KENT BRAMLETT
ROBERT PRESTON BRAMLETT
2400 Crestmoor Road
P.O. Box 150734
Nashville, TN

**SUTHERLAND ASBILL & BRENNAN, LLP**
S. LAWRENCE POLK
999 Peachtree Street NE
Atlanta, GA  30309

**BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP**
ERIC L. ZAGAR
ROBIN WINCHESTER
KRISTEN L. ROSS
280 King of Prussia Road
Radnor, PA 19087

**PURSLEY LOWERY MEEKS LLP**
R. HAL MEEKS
260 Peachtree Street NW
Atlanta, GA 30303

**PAUL HASTINGS JANOFSKY & WALKER LLP**
KEVIN C. LOGUE
75 E. 55th Street
New York, NY  10022

                         /s/ Britt K. Latham

22