IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| In re REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) |
| | ) |
| This Document Relates to: | ) |
| | ) |
| *In re Helios Closed-End Funds Derivative Litigation*, No. 2:11-cv-02935-SHM-TMP | ) ) ) |

No. 2:09-2009 SMH V

---

## ORDER APPROVING DERIVATIVE SETTLEMENT AND AWARD OF ATTORNEY'S FEES AND EXPENSES

---

Before the Court is Plaintiffs Cecil Cannaday and Ronald Godfrey's (collectively, "Plaintiffs") and nominal Defendants Helios Advantage Income Fund, Inc., Helios High Income Fund, Inc., Helios MultiSector High Income Fund, Inc. and Helios Strategic Income Fund, Inc.'s (collectively, the "Funds") March 8, 2013 Unopposed Joint Motion for Final Approval of Derivative Settlement.  (Mot. for Final App., ECF No. 65.)  Plaintiffs and the Funds previously entered into a Stipulation of Settlement (the "Settlement") with Defendants Morgan Asset Management, Inc. (now known as Regions Investment Management, Inc.), James C. Kelsoe, Jr., David H. Tannehill, J. Thompson Weller, Joseph C. Weller, Charles D. Maxwell, Michele F. Wood, Carter E. Anthony, Brian B. Sullivan, Thomas R. Gamble, Allen B. Morgan, Jr. and J.

Kenneth Alderman (collectively, "Defendants"). (Stip., ECF No. 49-2.)  The Court granted preliminary approval on January 4, 2013, including approval of the method of notice set out in the Settlement. (Prelim. Order, ECF No. 60).  Plaintiffs and the Funds also seek an award of attorney's fees and expenses as part of the Settlement. (Stip. ¶¶ 8-13, ECF No. 49-2.)

For the following reasons, Plaintiffs and the Funds' Motion for Final Approval is GRANTED.  Plaintiffs and the Funds' request for attorney's fees and expenses is GRANTED.

## I.   Standard of Review

### A. Approval of Settlement

Under Federal Rule of Civil Procedure 23.1, settlement of a derivative action requires court approval. Fed. R. Civ. P. 23.1(c).  Final approval of the proposed settlement is warranted if the Court finds the terms of the Settlement are "fair, reasonable, and adequate."  Granada Inv., Inc. v. DWG Corp., 962 F.2d 1203, 1205-06 (6th Cir. 1992).

### B. Attorney's Fees and Expenses

"[C]ourts, exercising their equitable powers, have permitted a plaintiff whose efforts have created a fund benefiting others as well as himself to recoup some of the costs of litigation, including attorneys' fees, out of the common fund or directly from the other parties enjoying the benefits who are required to pay their proportionate share of the costs."

2

*Shlensky et. al. v. Dorsey*, 574 F.2d 131, 149 (3d Cir. 1978) (internal citations omitted).  Plaintiffs in shareholder derivative actions may recover their expenses and attorney's fees from the corporation on whose behalf their action is taken if the corporation derives a benefit from successful settlement of the case.  *Id.* (internal citations omitted).  Such an award must be reasonable.  *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

## II.  Notice and Settlement

The Court has reviewed the record in this case, the Settlement, the Plaintiffs and the Funds' Joint Motions for Preliminary and Final Approval of Derivative Settlement, and the supporting memoranda.  The Court has held a Preliminary Approval Hearing and a Final Approval Hearing.  (Prelim. Hearing, ECF No. 59; Final Hearing, ECF No. 72.)  At the Final Approval Hearing, the Court heard presentations from Plaintiffs, the Funds, and the Defendants.  (Final Hearing.)

Based on its independent assessment of the record, the Court makes the following findings and reaches the following conclusions.

### A. Sufficiency of Notice

Under Federal Rule of Civil Procedure 23.1, notice of a proposed settlement must be given to shareholders in the manner the court orders. Fed. R. Civ. P. 23.1(c).  Notice meets the

3

requirements of Rule 23.1 and due process if it is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." In re Gen. Tire and Rubber Co. Sec. Litig., 726 F.2d 1075, 1086 (6th Cir. 1984) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 399 U.S. 306, 314 (1956)).  That is accomplished in a derivative action if the notice "describes the terms of the settlement, the reasons for the independent directors' determination to seek dismissal of the suits, the legal effect of the settlement and the rights of the shareholders to voice their objections." Id.

     The Court approved the Notice submitted by Plaintiffs and the Funds at the Preliminary Approval Hearing.  (Prelim. Order, ECF No. 60.)  The Notice describes the terms of the Settlement, including the terms of the requested attorney's fees, the legal effect of the Settlement on shareholder claims, and any shareholder's right to object to the Settlement at the Final Approval Hearing.  (Notice, ECF No. 60-1.)  The Settlement was attached to the Notice.  (Notice, at 1.)

     The Court approved the proposed method of disseminating the Notice by filing it with the Securities and Exchange Commission by a Form 8-K.  (Prelim. Order.)  At the time of the Final Approval Hearing, neither Plaintiffs nor the Funds' counsel, nor

the Court had received any objections to the Settlement.  (Resp. to Mot. for Final App., ECF No. 68.)

The Notice was reasonable under Rule 23.1.  The due process requirements have been met.

### B. Settlement Approval

In compliance with Rule 23.1(c), the Court required the Plaintiffs to send Notice to all shareholders by means reasonably calculated to give them actual notice of the terms of the proposed Settlement.  (Prelim. Order, ECF No. 60); Fed. R. Civ. P. 23.1(c).  The parties filed the Settlement identifying all agreements made in connection with the proposed Settlement. (ECF No. 49-2).  The Court gave all shareholders the right to file written objections to the proposed Settlement, but none was filed.  (Prelim. Order; Resp. to Mot. for Final App., ECF No. 68)  The Court held a Final Approval Hearing on April 12, 2013. (Final Hearing); Fed. R. Civ. P. 23.1(c).

The procedural requirements of Rule 23.1(c) have been satisfied.  Final approval of the Settlement is warranted if the Court finds that the terms of the Settlement are fair, reasonable, and adequate.

A district court may consider a variety of factors to determine whether a derivative settlement is fair, reasonable, and adequate.  The Sixth Circuit has never addressed whether settlement in a shareholder derivative suit under Rule 23.1(c)

5

is governed by the seven factors used to determine whether a class action settlement under Rule 23 is fair, reasonable, and adequate. The Sixth Circuit has recognized that the overriding factor to consider in a shareholder derivative action is whether the settlement is the product of fraud or collusion. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." Leonhardt v. ArvinMeritor, Inc., 581 F.Supp.2d 818, 838 (E.D. Mich. 2008). "Absent evidence of fraud or collusion, such settlements are not to be trifled with." Priddy v. Edelman, 883 F.2d 438, 447 (6th Cir. 1989). Other relevant factors the Sixth Circuit has recognized in a Rule 23.1(c) case include the "likelihood of success on the merits, the risk associated with the expense and complexity of litigation, and the objections raised by the class members." Granada, 962 F.2d at 1205. "The Court enjoys wide discretion in assessing the weight and applicability of these factors." Id.

The parties seek approval of the Settlement payment of $6,000,000.00. The Settlement in the instant case was the result of extended arm's-length negotiations among sophisticated parties. The involvement of multiple representatives from many law firms confirms a lack of collusion. All of the negotiations were overseen by Professor Eric D. Green, an experienced complex-litigation mediator. Professor Green's participation

also confirms an absence of collusion. The negotiations were accompanied by the exchange of comprehensive mediation statements and supporting evidence totaling 6.7 million pages of confidential documents and other information. (Winch. Decl., ECF No. 65-2, at ¶ 31.) The amount of information exchanged further supports the absence of fraud or collusion. Thacker v. Chesapeake Appalachia, L.L.C., 695 F.Supp.2d 521, 531 (E.D. Ky. 2010). There is no evidence of fraud or collusion in this case.

Success on the merits is not clear. Settlements are particularly favored in shareholder derivative actions "because litigation is notoriously difficult and unpredictable." Granada, 962 F.2d at 1205 (internal quotations and citations omitted). Liability is not a foregone conclusion, despite the Plaintiffs and the Funds' belief that they have asserted meritorious claims. (Drake Decl., ECF No. 65-3, at ¶ 7.) At the time of the Settlement, Defendants' motions to dismiss had been filed. (Mot. to Dismiss, ECF No. 33). The Defendants would also have been likely file summary judgment motions. (Winch. Decl. at ¶ 34.) Either could defeat the Plaintiffs and the Funds' claims. In their pending Motions, Defendants assert that they have several strong defenses. (Mot. to Dismiss.) Defendants argue that Maryland law does not recognize a stand-alone claim for breach of fiduciary duty or unjust enrichment. (Id. at 1.) They argue that broad liability limitations in

their Investment Advisory Agreements and in the Funds' own
Articles of Incorporation prevent substantial recovery if the
Plaintiffs and the Funds prevail. (Id.) They assert a
limitations defense based on the three-year statute of
limitations in Maryland. (Id. at 2.) Plaintiffs and the Funds
recognize that their claims may not prevail in this action.
(Mot. for Final App. at 13.) Even if successful, the liability
limitations in favor of the Defendants "would still have posed
significant issues and been subject to further litigation," such
that "Plaintiffs and their counsel might even fail to obtain any
relief at all if the derivative claims were fully litigated."
(Id.)

    "The certain and immediate benefits [of the Settlement]
outweigh the possibility of obtaining a better result at trial,
particularly when factoring in the additional expense and long
delay inherent in prosecuting complex litigation through trial
and appeal." In re Cardizem CD, 218 F.R.D. 508, 525 (E.D. Mich.
2003). The Settlement offers an immediate $6,000,000.00 payment
to the Funds and their shareholders. That is five times the
amount of out-of-pocket costs incurred by the Funds during this
litigation. It is almost 16% of the damages sustained as a
result of the $37,800,000.00 restatement. The Funds were able
to resolve the claims asserted against them in the related
closed-end class action, In re Regions Morgan Keegan Closed-End

<u>Fund Litigation</u>, No. 2:07-cv-02830-SHM-dkv (the "Class Action"), and will not be responsible for making any payments in that settlement.   The likelihood of success on the merits is problematic and recovery is uncertain because of the liability limitations favoring Defendants.   The certainty of the Settlement and the benefit it conveys weigh heavily in favor of approval.

This action is complex and the cost to complete discovery would be high. Shareholder derivative suits are "notoriously difficult and unpredictable."   <u>Granada</u>, 962 F.2d at 1205. The alleged wrongdoing in this case occurred from 2006 to 2008. (Winch. Decl. at ¶ 27.)   Plaintiffs admit discovering all of the necessary documents and witnesses would have proven difficult, despite the 6.7 million pages of discovery they received in preparation for mediation.   (<u>Id.</u>)   No formal document discovery has been commenced or completed.   (<u>Id.</u>)   The Funds admit they do not have many of the important documents necessary to prove their claims.   (Mot. for Final App. at 10-11.)   No depositions have been taken.   (<u>Id.</u>)   No experts have been designated and no expert discovery has been conducted.   (<u>Id.</u>)   No motions for summary judgment have been briefed or argued.   (<u>Id.</u>)   Continued litigation would be costly because the Funds' Bylaws and Certificates of Incorporation allow for indemnification of directors and officers to the full extent permitted by law.

(Drake Decl. at ¶ 8.) The Funds have already spent $1,132,780.00 in this action and the related Class Action. (Id.) Those costs have depleted the Funds' insurance coverage. (Id.) If litigation continues, the Funds would likely have to spend millions of dollars in legal fees and expenses for an indeterminate period of time out of their own assets. (Id.) That could significantly or entirely diminish the Funds' net asset values. (Id. ¶ 10.) The Settlement prevents that result. The complexity of the case and the high projected cost of proceeding favor approval of the Settlement.

Notice of the Settlement was distributed on January 11, 2013, in accordance with the Court's Preliminary Approval Order. (Roman Decl., ECF No. 69.) Any objections to the Settlement had to be filed with the Court and served on the parties by March 22, 2013. (Prelim. Order.) No objections were filed or served by that date. (Resp. in Support, ECF No. 68.) The absence of timely shareholder objections to the Settlement favors approval.

All of the Granada factors favor concluding that the proposed Settlement is fair, reasonable, and adequate.

Although the Granada factors are sufficient to find the proposed Settlement is fair, reasonable, and adequate, the Settlement also warrants approval under the remaining Rule 23 factors, on which the parties rely. Those factors are "the amount of discovery engaged in by the parties . . . the opinions

of class counsel and class representatives . . . [and] the
public interest." <u>Vassalle v. Midland Funding, LLC</u>, 708 F.3d
747, 754-55 (6th Cir. 2013) (internal citations and quotations
omitted).

There has been adequate discovery to satisfy the first
additional factor. Formal discovery is not required. <u>Sheick v.</u>
<u>Auto Component Carrier LLC</u>, No. 09-CV-14429, 2012 U.S. Dist.
LEXIS 110411, at *53-54 n.3 (E.D. Mich. Oct. 18, 2010). The
parties must develop a body of information "(i) sufficient to
permit their informed assessment of the litigation and
settlement, (ii) sufficient to inform the Court that their
dispute is genuine and based on good-faith, albeit
diametrically-opposed, legal positions, and (iii) sufficient to
support the conclusion that the settlement is reasonable and
desirable from all perspectives." <u>Id.</u> at *53-54.

The Plaintiffs and the Funds have reached a stage where an
intelligent evaluation of the litigation and the propriety of
the Settlement can be made. Before the litigation commenced and
throughout its pendency, counsel conducted extensive
investigation of the claims and allegations. (Winch. Decl. ¶¶
6, 30.) When the parties agreed to the Settlement, the
Defendants' motion to dismiss was fully briefed and there had
been extensive settlement negotiations. Plaintiffs' counsel
reviewed and analyzed documents including financial reports,

press releases, SEC filings, and documents in other actions relating to Defendants' alleged misconduct. (Id. ¶ 31.) Counsel made public information requests to the SEC and various state agencies pursuant to the federal Freedom of Information Act and its state counterparts seeking information about federal and state agencies' investigations into the Defendants' alleged wrongdoing and reviewed thousands of pages of documents received from those agencies. (Id.) Defendants produced and lead counsel reviewed approximately 6.7 million pages of documents in advance of the mediation. (Id.) All of this information provided counsel with a clear picture of the strengths and weaknesses of this case and the sufficiency of the legal and factual defenses the Defendants would raise. Counsel had this information when deciding to settle on a basis highly favorable to the Funds and their shareholders. The amount of discovery accomplished in this case warrants approval of the Settlement.

The Board of Directors of the Funds (the "Board") and counsel for the Plaintiffs and the Funds approve the Settlement. "In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." Thacker, 695 F.Supp.2d at 532. Counsel have represented to the Court that, given the circumstances of the case and the anticipated

litigation risk, they believe they have achieved the best possible result.   The Board, which authorized the Plaintiffs to prosecute the action against the Defendants on the Funds' behalf, has determined in its business judgment that the Settlement confers a substantial benefit on the Funds and is fair, reasonable, and adequate to the Funds and their shareholders.   (Drake Decl. ¶ 4).

Settlement is also in the public interest.   It will conserve judicial resources and permit monetary recovery by the Funds and their shareholders.   The additional factors considered in Rule 23 class actions also favor concluding that the Settlement is fair, reasonable, and adequate.

Plaintiffs' Motion for Final Approval is GRANTED.   The Settlement is ADOPTED and APPROVED.

### III. Attorney's Fees and Expenses

The Plaintiffs and the Funds have also requested attorney's fees and expenses (the "Fee and Expense Award").   (Stip. at 16–17.)   The Court gave all shareholders the right to file written objections to the proposed Settlement.   (Prelim. Order; ECF No. 68.)   No objections were filed.   (Resp. in Support.)   The Court held a Final Approval Hearing on April 12, 2013.   (Final Hearing.)   The Court heard argument from Plaintiffs, the Funds, and Defendants at the Final Approval Hearing.

All of the procedural prerequisites to an award of attorney's fees and expenses have been satisfied. The Settlement benefits the Funds so that attorney's fees and expenses may be appropriate if they are reasonable.

In general, "there are two methods for calculating attorney's fees: the lodestar and the percentage-of-the-fund." Van Horn v. Nationwide Prop. & Cas. Ins. Co., 436 Fed. App'x 496, 498 (6th Cir. 2011). "District courts have discretion 'to select the more appropriate method for calculating attorney's fees in light of the unique characteristics [of shareholder derivative suits] in general, and of the unique circumstances of the actual cases before them.'"   Id.   (quoting Rawlings v. Prudential-Bache Props., Inc., 9 F.3d 513, 516 (6th Cir. 1993)). "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." Rawlings, 9 F.3d at 516.  A district court "generally must explain its 'reasons for adopting a particular methodology and the factors considered in arriving at the fee.'"   Id.   (quoting Moulton v. U.S. Steel Corp., 581 F.3d 344, 352 (6th Cir. 2009)).

Plaintiffs have argued that the Fee and Expense Award in the amount of $1,800,000.00 is reasonable under either of these methods.

To recover attorney's fees under the percentage of the fund method, "(1) the class of people benefitted by the lawsuit must be small in number and easily identifiable; (2) the benefits must be traceable with some accuracy; and (3) there must be reason for confidence that the costs can in fact be shifted with some exactitude to those benefitting." Geier v. Sundquist, 372 F.3d 784, 790 (6th Cir. 2004).

In the instant case, because the Funds make up the class benefitted by the lawsuit, the class is small and easily identifiable. The benefit to the Funds is traceable to the work of Plaintiffs' counsel. Because the Funds are the class benefitted and they must pay the attorney's fees and expenses from the common fund, the costs can be shifted with exactitude to those benefitted. The Fee and Expense Award is thirty percent of the $6 million common fund. The typical percentage award in the Sixth Circuit ranges from twenty to fifty percent of the common fund. In re Cincinnati Gas & Elec. Co. Sec. Litig., 643 F.Supp. 148, 150 (S.D. Ohio 1986). At thirty percent, the Fee and Expense Award is well within the applicable range awarded by Sixth Circuit courts and warrants approval.

Although the Court may award fees in its discretion, it should consider:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether

15

> the services were undertaken on a
> contingent basis; (4) society's stake in
> rewarding attorneys who produce such
> benefits in order to maintain an incentive
> to others; (5) the complexity of the
> litigation; and (6) the professional skill
> and standing of counsel involved on both
> sides.

Ramey, 508 F.2d at 1196.

In this case, there is no dispute that the litigation is complex, that counsel for all parties are highly skilled and nationally well-regarded, and that counsel for the Plaintiffs undertook a substantial risk and bore considerable costs by accepting this case on a contingent fee basis. Society has a clear stake in rewarding attorneys as an incentive to take on complicated, risky, contingent fee shareholder derivative cases.

The value of Plaintiffs' legal services on an hourly basis can be established by evaluating the Fee and Expense Award using the lodestar cross-check. Johnson v. Midwest Log. Sys., Ltd. , No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *16 (S.D. Ohio May 25, 2013). "In contrast to employing the lodestar method in full, when using a lodestar cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." Id. at *17 (internal quotations and citations omitted). Plaintiffs spent approximately 4,149 hours preparing this case, producing a cumulative lodestar value of $1,672,712. (Winch. Decl. at ¶ 62.) The resulting lodestar multiplier is

16

approximately 1.03.   In comparable circumstances, "most courts agree that the typical lodestar multiplier in a large post-PSLRA securities class action[] ranges from 1.3 to 4.5." In re Cardinal Health Inc. Sec. Litigs., 528 F.Supp.2d 752, 767 (S.D. Ohio 2007) (collecting cases).   The lodestar cross-check multiplier is well below this reasonable range.

The most important factor in determining the reasonableness of the Fee and Expense Award is the value of the benefit conferred on the Funds.   This is a complex case, and the Plaintiffs and Funds' likelihood of success on the merits is in question.   Nevertheless, Plaintiffs' counsel was able to negotiate a multimillion-dollar settlement that is almost five times the costs incurred by the Funds and covers nearly sixteen percent of the Funds' damages.   If the case had proceeded to trial, the Funds faced a substantial risk of no recovery based on the merits and the liability limitations in favor of the Defendants.

The Plaintiffs and the Funds seek payment of expenses totaling $82,819.53.   (Winch. Decl. ¶ 62, ECF No. 65-2.)   The Plaintiffs and the Funds state that $20,875.00 represents payments to experts, $12,637.63 represents the costs of mediation, and the remainder includes photocopying, travel, and lodging.   (Id. ¶¶ 60-61.)   The Plaintiffs and the Funds have submitted itemized lists of all expenses.   (Id.)   No objections

17

have been raised to the Plaintiffs and the Funds' expenses. After review of the Plaintiffs and the Funds' submissions, the Court finds that the requested expenses are reasonable and should be paid from the common fund.

The Plaintiffs and the Funds' requested Fee and Expense Award is reasonable under the unique circumstances of this case. The percentage of the fund method is the more appropriate method of addressing attorney's fees, and the lodestar cross-check supports the fee requested. All of the <u>Ramey</u> factors favor the requested Fee and Expense Award of thirty percent of the fund, or $1,800,000.00. The request for attorney's fees and expenses is GRANTED.

## IV.   Dismissal of Claims

This action, together with all claims asserted in it, is dismissed with prejudice by the Plaintiffs and the Funds against each and all of the Defendants. The Parties shall bear their own costs, except as otherwise provided above or in the Settlement.

After review of the record, including the Complaint and the dispositive motions, the Court concludes that, during the course of this action, the parties and their respective counsel have complied at all times with the requirements of Rule 11.

## V.   Continuing Jurisdiction

The Court retains jurisdiction for purposes of effecting the Settlement, including all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement.

**VI.  Conclusion**

For the foregoing reasons, Plaintiffs and Funds' Motion for Final Approval is GRANTED.  Plaintiffs and Funds' request for attorney's fees and expenses is GRANTED.  The parties' Stipulation of Settlement is APPROVED.  The settlement fund is approved in the amount of $6,000,000.00.  Attorney's fees and expenses are approved in the amount of $1,800,000.00.  All claims in this matter are DISMISSED except as provided above.


So ordered this 5th day of September, 2013.


                              /s/ Samuel H. Mays, Jr.
                              SAMUEL H. MAYS, JR.
                              UNITED STATES DISTRICT JUDGE